1  Philip Christian Bikle

2  1616 South Varna Street

3  Anaheim, California [92804]

4  Phone: (301) 802-9953

5  Appellant in Pro Per

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAR 0 7 2014

FILED _____  ____
DOCKETED _____
DATE          INITIAL

8  UNITED STATES COURT OF APPEALS

9  FOR THE NINTH CIRCUIT

11  Philip C. Bikle                    ) Case No. 13-56504

12         Plaintiff - Appellant,       ) D.C. No. 8:13-cv-00911-DOC-JPR

13  v.                                 )

14  Doe1-9, in individual capacities;           ) APPEAL

15  Traffic supervisor, "Martha", in her individual capacity;  ) APPELLANT'S BRIEF

16  Commissioner Michael Pearce, in his individual capacity;)

17  Judge Deborah Sanchez, in her individual capacity;       )

18  Superior Court of the State of California at Bellflower;  )

19         Defendants                                        )

1

1

# TABLE OF CONTENTS

2   STATEMENT OF THE CASE.................................................6

3   Nature of the Proceeding..................................................6

4   Notice of Appeal.............................................................6

5   Jurisdiction....................................................................6

6   Nature of the Judgment....................................................7

7   Questions Presented........................................................7

8   Summary of Argument......................................................9

9   Summary of Facts...........................................................11

10   ASSIGNMENT OF ERROR..............................................22

11   Argument.....................................................................27

12      I. Statutory and State Constitutional Analysis...................28

13      II. Federal Law Analysis .............................................44

14   CONCLUSION.............................................................53

15   ADDENDUM................................................................54

16

17

## CONSTITUTIONAL PROVISIONS AND STATUTES

18   United States Constitution, Amendment V .....................10, 11, 25, 30, 54

19   United States Constitution, Amendment VI......................6, 10, 11, 25, 54

20   United States Constitution, Amendment XIV...................6, 10, 11, 25, 55

21

## CALIFORNIA CONSTITUTIONAL PROVISIONS AND STATUTES

California Constitution, article III, section 3............................................10, 34, 55

California Constitution, article V, section 13...................................................29, 55

California Government Code § 22....................................................................44, 56

California Government Code § 26500.............................................................42, 56

California Government Code § 26502.............................................................42, 57

California Penal Code § 17(d)........................................................................35, 57

California Penal Code § 19..............................................................................9, 57

California Penal Code § 691(c)......................................................................41, 57

California Penal Code § 691(d)....................................................................7, 8, 58

California Penal Code § 740..........................................................................42, 58

California Penal Code § 853.9.......................................................................42, 58

California Penal Code § 949..........................................................................43, 59

California Penal Code § 950..........................................................................43, 60

California Penal Code § 952..........................................................................43, 60

California Penal Code § 959....................................................................43, 61, 62

California Vehicle Code § 40513.............................................................8, 42, 65

Certificate of Compliance with type-volume limitation, typeface requirements,

        and type style requirements................................................................67

APPENDIX

Dismissal Order..............................................................................................68

3

# TABLE OF AUTHORITIES

## <u>CASES</u>

Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986)........................................23

Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872)...............23, 44, 45, 47, 49, 51

City of San Diego v. Municipal Court, 102 Cal. App.3d 775, at 778,

      162 Cal. Rptr. 420 (1980)...............................................................35

Davis v. Municipal Court, 46 Cal.3d 64 at 77, 249 Cal. Rptr. 300, 757,

      P.2d 11 (1988).............................................................33, 38

Dix v. Superior Court, 53 Cal.3d 442 at 451, 279 Cal. Rptr. 834,

      807 P.2d 1063 (1991)....................................10, 33, 37, 40

Esteybar v. Municipal Court, 5 Cal.3d 119 at 127, 95 Cal. Rptr. 524,

      485 P.2d 1140 (1971).............................................................33

Heldt v. Municipal Court, 163 Cal. App.3d 532  (1985)....................................35

Hicks v. Board of Supervisors, 53 Cal. App.3d 228, at 240-241,

      138 Cal. Rptr. 101 (1977)..........................................................35

Jones v. Superior Court, 96 Cal. App.3d 390, 157 Cal. Rptr. 809 (1979)...............35

Mullis v. United States Bankruptcy Court, 828 F.2d 1385,

      1389 (9th Cir.1987)....................................................................24

Municipal Court v. Superior Court, (Gonzalez) 5 Cal. 4th 1126 at 1131,

      22 Cal. Rptr. 2d 504, 857 P.2d 325  (1993)....................................35

People v. Carlucci, 23 Cal. 3d 249, 590 P.2d 15 (1979)...................................22, 28

4

People v. Municipal Court, (Pellegrino) 27 Cal. App.3d 193 at 200,

     103 Cal. Rptr. 645 (1972)...............................................................34, 35

People v. Smith, 53 Cal. App.3d 655, at 659-660, 126 Cal. Rptr. 195 (1975)..34, 35

People v. Stapf, 28 Cal. App. 4th 1756, 34 Cal. Rptr. 2d 351 (1994)...........23, 31, 32

People v. Wallace, 169 Cal. App.3d at 406, 215 Cal. Rptr. 203 (1985)..................33

Ralph v. Police Court, 84 Cal. App. 2d 257 (1948)........................................30

Rodriquez v. Solis, 1 Cal. App.4th 495, 501-502 (1991)................................36

Rankin v. Howard, 633 F.2d 844 (9th Cir. 1980)........................................47

Serna v. Superior Court, 40 Cal.3d 239, 254, 219 Cal. Rptr. 420,

     707 P.2d 793 (1985)......................................................................35

State of California v. Superior Court, 12 Cal.3d 237, 247 (1974).........................36

Stump v. Sparkman, 435 U.S. 349, 356, 357 (1978)............................23, 49, 51, 52

# APPELLANT'S BRIEF

## STATEMENT OF THE CASE

### Jurisdiction

Bikle brought this action before the United States District Court pursuant to 42 U.S.C. §1983, §1985, §1986 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution and this jurisdiction is founded upon 28 U.S.C. §1331 and §1343(a) (3) and (4). Bikle furthermore invoked the supplemental jurisdiction of the aforementioned Court pursuant to 28 U.S.C. §1367(a) to hear and decide claims arising under State law.

Jurisdiction of this Court of Appeals is invoked under Section 1291, Title 28, United States Code, as an appeal from a final judgment of dismissal with prejudice, on July 24, 2013, in the United States District Court for the Central District Court of California, in Santa Ana. Notice of appeal was timely filed, on August 22, 2013, in accordance with Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure (F.R.A.P.).

### Nature of the Proceeding

This is a civil case in which the Appellant, Philip Christian Bikle, appeals the judgement of dismissal with prejudice, pursuant to screening of a complaint under 28 U.S.C. § 1915(e)(2).

A copy of the complaint was provided to the District Clerk in order to allow compliance with F.R.A.P. (11)(b)(2).

## Nature of the Judgment

The trial court found that Bikle's complaint against Defendants failed to state a claim upon which relief may be granted, that it was frivolous, and that all of the Defendants were absolutely immune from suits for damages regarding actions allegedly taken within their capacity as judges or court employees. Furthermore, the trial court found that the entirety of the complaint addresses actions taken by judges and other court staff in the course of their judicial duties. Bikle's request for an injunction was dismissed, in addition to charges of conspiracy to deprive Bikle of his due process rights and state-law tort claims under supplemental jurisdiction were dismissed.

A copy of the order dismissing the complaint with prejudice is attached at the end of this brief.

## Questions Presented

1)    A notice to appear is signed by Bikle, under duress, and a peace officer. The latter, who does not dually hold one of the titles listed in California Penal Code § 691(d), subsequently files an altered duplicate notice to appear with a court clerk in a Superior Court in the State of California at Bellflower. Does this court clerk have the authority to initiate the prosecution of criminal causes of

action on behalf of the People of the State of California under California Vehicle Code § 40513(b)?

2) Assuming (1) is answered in the affirmative, can the court clerk initiate the prosecution of criminal causes of action on behalf of the People of the State of California without the clear agreement of an individual who holds one of the titles included in California Penal Code § 691(d)?

3) Does a notice to appear, which lacks the signature of a prosecuting attorney and their clear intent to initiate prosecution, constitute a case on behalf of the People of the State of California?

4) Assuming (1) or (2) or (3) are answered in the negative, did the Superior Court of California at Bellflower have subject-matter jurisdiction over a criminal proceeding involving Bikle?

5) Does the notice to appear issued by the peace officer to Bikle, which lacks both a signature by an authorized prosecuting authority-as mentioned in California Penal Code § 691(d) and a signature by either a judge or a clerk, constitute a properly served summons?

6) Bikle only made special appearances before the Superior Court at Bellflower. All of Bikle's oral arguments challenged jurisdictional deficiencies. In addition, the jurisdictional deficiencies were challenged in filed motions to quash and dismiss, which also made note of Bikle's special appearances to challenge jurisdiction. Did the Superior Court at Bellflower acquire in personam jurisdiction

1  over Bikle as a result of his special appearances and arguments that attacked the

2  Court's lack of jurisdiction?

3       7)    Assuming (4) or (5) or (6) are answered in the negative, have any of

4  the defendant employees of the Superior Court at Bellflower acted clearly absent

5  all jurisdiction while creating a criminal proceeding, scheduling an arraignment

6  date, and holding repeated arraignment proceedings against Bikle?

7       8)    Assuming (7) is answered in the affirmative, can absolute immunity

8  be granted to any of the defendants who acted clearly absent all jurisdiction?

9       9)    Assuming (8) is answered in the negative, is Bikle entitled to money

10  damages, upon a showing of cause, from any of the defendants who can not be

11  granted absolute immunity?

12       10)    Assuming (9) is answered in the affirmative, is Bikle's complaint

13  frivolous?

14  **Summary of Argument**

15      Bikle was given a notice to appear by a peace officer. This peace officer filed

16  the notice to appear with a clerk at the Superior Court of California at Bellflower.

17  A clerk then decided to initiate criminal prosecution and initiated criminal

18  proceedings with misdemeanor and infraction charges. Bikle was facing six

19  months in jail and a $1000 fine. See Cal. Pen. Code § 19. This clerk is a member of

20  the judicial branch. The discretion to initiate criminal prosecution is vested in the

21  executive branch with a prosecuting attorney. It was a **violation of due process**

9

1    **and the separation of powers** for the clerk to have decided to initiate criminal

2    prosecution against Bikle. See <u>Dix v. Superior Court</u>, 53 Cal.3d 442 at 451, 279

3    Cal. Rptr. 834, 807 P.2d 1063 (1991); <u>see</u> United States Constitution, Amendments

4    Fifth, Fourteenth; <u>see also</u> California Constitution, article III, section 3.

5        Bikle made five special appearances at the Superior Court. Bikle filed

6    motions to quash and dismiss then attempted to hold a hearing in open court on a

7    proposed date, over a month later. All of Bikle's written motions attacked the

8    judges lack of jurisdiction. All of Bikle's oral arguments attacked the judges lack of

9    jurisdiction. The court record did not have a verified complaint signed by a

10   prosecuting attorney, nor did it have a proof of service of a complaint and a

11   summons signed by either, a judge or a court clerk, and the prosecuting attorney.

12   Bikle was forced to appear, each time, under threat of issuance of a warrant and

13   arrest. Bikle attempted to address the lack of jurisdiction at a scheduled hearing

14   which the court failed to properly schedule and which traffic supervisor "Martha"

15   alleged Bikle failed to appear for; however, Bikle did appear at court only to find

16   that he had not been scheduled as requested. Commissioner Michael Pearce

17   attempted to elicit a plea to the alleged charges, although the court record

18   contained Bikle's to separate motions which attacked the lack of jurisdiction. Judge

19   Sanchez ignored Bikle's oral arguments regarding the lack of jurisdiction, refused

20   to rule on a motion to dismiss which attacked the lack of jurisdiction, and

21   repeatedly attempted to coerce a plea to the alleged charges. All of the Defendants

    did knowingly act without jurisdiction. The judges attempted to elicit a plea

10

1  without notifying Bikle of the right to have assistance of counsel thus depriving

2  Bikle of due process. Furthermore, Judge Sanchez attempted to compel Bikle to be

3  a witness against himself, on multiple occasions. See United States Constitution,

4  Amendments Fifth, Sixth, Fourteenth.

### Summary of Facts

6  The following is a subset of the alleged facts from the original complaint.

7  Bikle requests that all of the alleged facts be taken into consideration with this

8  appeal; however, this subset pertains to the core issues on appeal, to wit:

9      15. Court employee Doe1, filed the notice to appear, Y214682,

10      as a criminal complaint, on an unknown date and time, in

11      between January 1, 2012 and February 27, 2012.

12      16. The notice to appear was signed by Officer A. Santos, of the

13      Los Angeles Sheriff's Department, at Lakewood Station.

14      17. Officer Santos is not licensed to practice law.

15      18. Officer Santos is not authorized, by California law, to

16      initiate criminal prosecution in the name of the People of the

17      State of California.

18      19. Doe1 caused a notice to be mailed to Plaintiff on February

19      27, 2012 which indicated that a mandatory appearance was

20      required.

21

20. On April 25, 2012 Document #2001, an informal request for discovery to the District Attorney's office at Bellflower, was delivered via USPS (Delivery confirmation receipt #03102640000013550554).

21. On May 3, 2012 Bikle filed Document #1000 Version 1.000 titled, "Motion to quash for lack of a Verified Complaint".

22. Bikle proposed a venue to the Court of June 6, 2012, at 1:00PM, in Department 001.

23. A court employee, Doe2, failed to schedule an appearance date for Document #1000 Version 1.000.

24. If Doe2 scheduled an appearance date for Document #1000 Version 1.000, then Doe2 failed to provide Notice to Bikle.

25. On May 3, 2012 Bikle filed Document #1001 Version 1.000 titled, "Motion to dismiss on the grounds that the Peace Officer and Clerk of Court are practicing law without a license".

26. Bikle proposed a venue to the Court of June 6, 2012, at 1:00PM, in Department 001.

27. A court employee, Doe3, failed to schedule an appearance date for Document #1001 Version 1.000.

28. If Doe3 scheduled an appearance date for Document #1001 Version 1.000, then Doe3 failed to provide Notice to Bikle.

29. On May 11, 2012 Document #2002, an informal request for discovery, was hand delivered to the District Attorney's Office at Bellflower.

30. On May 11, 2012 Bikle filed Document #1000 Version 1.001 titled, "Motion to quash for lack of a Verified Complaint".

31. Bikle proposed a venue to the Court of June 6, 2012, at 1:00PM, in Department 001.

32. A court employee, Doe4, failed to schedule an appearance date for Document #1000 Version 1.001.

33. If Doe4 scheduled an appearance date for Document #1000 Version 1.001, then Doe4 failed to provide Notice to Bikle.

34. On May 11, 2012 Bikle filed Document #1001 Version 1.001 titled, "Motion to dismiss on the grounds that the Peace Officer and Clerk of Court are practicing law without a license".

35. Bikle proposed a venue to the Court of June 6, 2012, at 1:00PM, in Department 001.

36. A court employee, Doe5, failed to schedule an appearance date for Document #1001 Version 1.001.

37. If Doe5 scheduled an appearance date for Document #1001 Version 1.001, then Doe5 failed to provide Notice to Bikle.

38. On June 1st, 2012 Bikle attempted to file a peremptory challenge against Commissioner Michael Pearce. A female

13

1    court employee, Doe6, refused to file my peremptory challenge

2    around 2:20pm.

3    39. Bikle made an appearance at Bellflower Courthouse on June

4    6, 2012. Bikle did not find his name on the list of scheduled

5    appearances posted outside of Department 001. Bikle filed 1

6    original written peremptory challenge with the Bellflower

7    Courthouse and Bikle kept 1 original written peremptory

8    challenge that had been stamped as received by the court, on

9    June 6, 2012, before the proposed hearing time of 1:00PM, as

10   Bikle did not know if a hearing would be held since two

11   separate Deputy Clerks of Court had specifically told him that

12   they did not have him scheduled for any thing other than an

13   arraignment on August 1, 2012. Bikle was told by the first

14   Deputy Clerk that he could go into Department 001 but that he

15   would not be heard with out being scheduled.

16   40. On June 7, 2012 Traffic Supervisor "Martha" issued process

17   in the form of a "correspondence inquiry" to Commissioner

18   Michael Pearce.

19   41. This correspondence inquiry indicates that the Plaintiff was

20   requesting "motion to quash & hearing for 6-6-12". The

21   correspondence inquiry did not indicate that Plaintiff had

     provided a stipulation to have his matters heard before

14

Commissioner Pearce. In addition, there was no mention of Plaintiff's motion to dismiss on the grounds that the Peace Officer and Clerk of Court were practicing law with out a license. Martha indicated that the alleged defendant failed to appear on June 6, 2012. The correspondence inquiry also indicates that Commissioner Pearce denied the motion to quash on June 7, 2012.

44. On June 11, 2012 Document #2005, notice of peremptory challenge was mailed to the Bellflower District Attorney's office.

45. On June 27, 2012 Document #1007v1.001, was mailed to the Bellflower District Attorney's office (Delivery confirmation receipt #70101870000123965129).

46. On June 29, 2012 Document #2003, a third informal request for discovery to the District Attorney's office at Bellflower, was delivered via United States Postal Service(USPS) (Delivery confirmation receipt #70111150000130464075).

50. On July 18, 2012 Document #2006, a fourth informal request for discovery to the District Attorney's office at Bellflower, was delivered via United States Postal Service (USPS) (Delivery confirmation receipt #70111150000130464112).

1    51. On July 27, 2012 Document #1007, a notice of a motion to

2    compel discovery was served on the District Attorney's office at

3    Bellflower via USPS (Delivery confirmation receipt

4    #70101870000123965136).

5    52. On August 1, 2012, Bikle appeared at Bellflower

6    Courthouse, 1PM, in department 001.

7    53. At this time, Commissioner Pearce failed to produce the

8    peremptory challenge, described earlier, from the case file.

9    54. Doe8 did one of the following things to the peremptory

10    challenge, which resulted in Pearce's failure to produce the filed

11    peremptory challenge: Steal, remove, or secrete; Destroy,

12    mutilate, or deface; Alter or falsify. Bikle does not currently

13    have enough facts to determine which of the listed actions

14    occurred to result in the absence of the peremptory challenge

15    from the case file, but it is clear that one of the actions must

16    have taken place, as the record could not be found.

17    55. On August 1, 2012 Bikle appeared at Bellflower

18    Courthouse, in Department 006. This appearance was the result

19    of disqualifying Commissioner Pearce. Before Bikle's case file

20    was transferred from Department 001 Bikle had a discussion

21    with Judge Sanchez, which was not on the record. During this

     discussion Bikle indicated concern about getting a ruling on the

motion to dismiss and that the motion to quash denial was done with out authority. When Bikle's case file arrived Judge Sanchez excused herself so that she could read over it. She came back within 20 minutes, at which point the record started.

56. Bikle was exhausted due to only getting about 5 hours of sleep the night before as a result of anxiety and pain. Bikle was also in extreme pain at this appearance.

57. Judge Sanchez immediately asked if Bikle wanted to plead not guilty when the record started.

58. Judge Sanchez did not rule on the Document #1001 Version 1.001 titled, "Motion to dismiss on the grounds that the Peace Officer and Clerk of Court are practicing law without a license" before jumping ahead to ask for a plea. Judge Sanchez did not rule on the Document #1001 Version 1.001 during the first, second, third, or fourth appearances of Bikle.

59. On August 1, 2012 Bikle requested for a copy of the verified complaint pursuant to California Penal Code 988.

60. Judge Sanchez gave the non-responsive comment, "The judicial counsel form is an appropriate method to charge you with the vehicle code sections. So what plea did you want to enter?" and changed the subject by asking what plea I wanted to

1    enter. Judge Sanchez did not provide Bikle with a copy of the

2    alleged complaint upon my request.

3    61. Bikle was exhausted and requested another week to

4    respond.

5    62. Judge Sanchez did not dismiss the case on any of the

6    occasions that Bikle raised oral argument regarding the points

7    contained within Document #1001 Version 1.001.

8    63. Bikle made numerous attempts to get the case dismissed as

9    there had clearly been no initiation of prosecution by an

10   individual who was authorized to initiate criminal proceedings

11   in the name of the People of the State of California.

12   64. On August 4, 2012, Document 1009v1.000, titled "A

13   verified statement of objection to further hearings or trials

14   before Judge Deborah L. Sanchez", was filed via USPS with the

15   Clerk    in    department    006    (Certified    Mail

16   #70101870000123965150).

17   66. On August 6, 2012, Bikle had JPL Process Service, serve

18   copies of Document #1009 Version 1.000, titled "Verified

19   Statement of objection to further hearings or trials before Judge

20   Deborah L. Sanchez (CCP 170.3(c)(1))", upon Judge Sanchez,

21   in response to Judge Sanchez's refusal to recuse herself and her

18

passing upon her own disqualification or upon the sufficiency in

law, fact, or otherwise, of the statement of disqualification

filed by Plaintiff.

67. 10 days after the filing of Document #1009 Version 1.000,

Judge Sanchez failed to file a consent or answer. Doe9, the

clerk with whom a copy was filed, by USPS, failed to notify the

presiding judge or person authorized to appoint a replacement

of the recusal as provided in subdivision (a) of California Code

of Civil Procedure 170.3.

69. On August 8, 2012, Judge Sanchez attempted to get Bikle to

be a witness against himself.

71. On August 14th, 2012 Bikle told Judge Sanchez that he had

correspondences with Deputy District Attorney Mario Trujillo

that stated there had been no initiation of prosecution. Judge

Sanchez indicated that the correspondences were not in the

court records for her to review; however, the court records at no

point included a complaint filed by an individual authorized to

initiate criminal proceedings in the name of the

People of the State of California. This should have been more

than enough evidence to have dismissed the case on the first

appearance, as these procedural deficits where clearly laid forth

in Document #1001 Version 1.001 titled, "Motion to dismiss on

19

the grounds that the Peace Officer and Clerk of Court are practicing law without a license", which was filed nearly 3 months before Bikle's initial arraignment. On August 21, 2012 Bikle filed Document #1013 Version 1.000, which reiterated the issue of the failure to initiate prosecution, amongst other pertinent failures in following the California Codes. The case was finally dismissed, but none of the proposed orders which Bikle had included with Document #1001 Version 1.001 and Document #1013 Version 1.000 were used. Both of which indicated that the prosecuting attorney had not initiated prosecution.

72. Judge Sanchez knew that there was no Prosecutor handling the case and said so on August 14, 2012. The case was not dismissed at that moment, as it should have been.

73. On August 14, 2012, Judge Sanchez attempted to get Bikle to be a witness against himself again.

74. On August 14, 2012 Bikle requested again for copy of the verified complaint pursuant to Penal Code 988. He still was not given a copy by the court. Bikle was never given a copy of the verified complaint, at arraignment, by the court.

75. A carbon copy of a notice to appear is not an exact duplicate of an alleged complaint filed with the court because as Judge

20

1    Sanchez indicated, "They usually record those on the back of

2    the citation.", in reference to additional allegations by a peace

3    officer.

4    76. On August 21, 2012 Judge Sanchez dismissed the last of the

5    alleged charges in the alleged complaint.

6    77. At no point in time did the record contain evidence of a final

7    agency determination in regards to the contested issue of the

8    right to travel and property use rather than the alleged operation

9    of a motor vehicle.

10   78. The jurisdiction of the court was not invoked, at any time,

11   by an individual authorized to initiate criminal proceedings in

12   the name of the People of the State of California.

13   80. On October 2, 2012 a distinctly different Document #2010

14   was sent to Sheriff Leroy Baca to clarify the LASD policies

15   with processing traffic citations.

16   81. On October 23, 2012, as I was en route to hand deliver my

17   claim with the appropriate government office, Sergeant Suarez

18   from Lakewood Station contacted about my inquiry regarding

19   policies for the handling of Notices to Appear. He said the

20   District Attorney is not involved at all in traffic matters. He said

21   the arresting officer sends the Notice To Appear (NTA) to traffic

21

investigators. The traffic investigators make a copy of the NTA and send the copy to the court.

82. In October 2012 Document #2011 was mailed to the court reporter for Department 006.

## ASSIGNMENT OF ERROR

1. **The District Court incorrectly decided the facts.**

(A)   The correct facts are stated in the original complaint, as allegations 15-86. Before the facts can be examined, they must first be interpreted correctly. See Dismissal Order at 10-12.

With regards to testing if absolute immunity applied to the defendants, the District Court erred in it's interpretation of the facts that subject-matter jurisdiction had been conferred upon the Superior Court and that all of the defendants were thus covered by immunity.

2. **The District Court misinterpreted the law.**

This error included relying upon People v. Carlucci, 23 Cal. 3d 249, 590 P.2d 15 (1979) as a justification for the court personnel actions without a prosecutor, which does not address the fact that a prosecutor **must first** invoke the jurisdiction of the court before the court can hold proceedings, either in the

22

prosecutor's presence or absence. <u>See</u> Dismissal Order at 10. In it's erroneous

application of <u>People v. Carlucci</u>, the District Court put the wagon before the horse.

3.    **The District Court applied the wrong law.**

The District Court applied the wrong law in assessing whether due process

was given to Bikle by the Superior Court of California at Bellflower, whether a

separation of powers violation had occurred, and whether the defendants were to

be afforded absolute immunity.

(A)    The District Court cited <u>People v. Stapf</u> in response to Bikle's claim

that the court clerk had initiated criminal prosecution by using a notice to appear,

which was not signed by a prosecuting authority to indicate prosecutorial intent, to

create a case for criminal proceedings. <u>See</u> Dismissal Order at 10. This case is not

controlling for a number of reasons.


(B)    The District Court erred by not adhering to the standard set forth in

<u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) 335, 352 (1872), 20 L.Ed. 646 for

determining if absolute immunity could be granted to the defendants. The District

Court cited <u>Ashelman v. Pope</u>, 793 F.2d 1072, 1075 (9th Cir. 1986), <u>Mullis</u>, 828

F.2d at 1389 (1987), in addition to <u>Stump v. Sparkman</u>, 435 U.S. 349, 356, 357

(1978) as indicating that, "...judicial immunity was only unavailable "when a judge

acts in clear absence of all jurisdiction" or performs an act that is not judicial in

nature". <u>See</u> Dismissal Order at 11. However, this is only a subset of the potential

scenario's where judicial immunity shall not be granted.

23

The District Court erred by asserting absolute quasi-judicial immunity for the court clerks. In re Castillo, 297 F.3d 940, 952 (9th Cir. 2002) and Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1390 (9th Cir. 1987) were cited in support of this contention; however, neither is controlling when considering the facts alleged, which include initiating criminal proceedings without the clear intention of a prosecuting authority to initiate prosecution of a criminal cause of action. See Dismissal Order at 11.

4.    **There are other reasons why the District Court's judgement was wrong.**

The court came to the wrong conclusion based on misinterpretation of the underlying facts and law.

The District Court failed to observe the fact that Doe1 filed a notice to appear as a criminal complaint. See Complaint at para. 15.

5.    **Other specific issues on appeal.**

The District Court erred by not holding an evidence hearing to aid in discerning the details of the case presented by Bikle. Bikle was not given an opportunity to be heard with regards to the plentiful evidence supporting his contentions that the District Attorney never initiated prosecution against him, which includes nothing less than such an admission by a Deputy District Attorney who works at Bellflower Courthouse. Bikle was not given an opportunity to subpoena the Superior Court of California at Bellflower for the alleged original complaint which the employees at the court used to create a criminal proceeding. If

24

Bikle has never been given a chance to see the true copy of the alleged complaint, in addition to obtaining a true copy thereof, then how could the District Court possibly know if prosecution was properly initiated let alone that the doctrine of absolute immunity could apply to all of the court employees named as defendants? Bikle was facing up to 6 months in prison and a $1000 fine as a result of the unlawfully commenced proceedings. Bikle has a right to be heard and present evidence supporting his contention of court employee liability as a result of acting clearly absent all jurisdiction.

In addition, Bikle intended to include charges for violating the 6th amendment and the 6th amendment via the 14th, as can be seen in the opening of the complaint and the claim of jurisdiction; however, due to the complexity of the case these sections for the causes of actions were accidentally omitted. See Complaint at 3, para. 6. These causes of action were to include the right to a speedy and public trial, to be confronted with the witnesses against Bikle, and to have the assistance of counsel. The alleged "case" was "arraigned" almost 10 months after the date in which Bikle was held to account by a peace officer. The peace officer was not present when the alleged violations were alleged to have occurred. And finally, Commissioner Pearce and Judge Sanchez both attempted to elicit pleas from Bikle without informing him of his right to counsel.

Furthermore, Bikle accidentally omitted the invocation of jurisdiction under the Fifth Amendment in the "Jurisdiction & Venue" section, as it was also clearly intended, being the first of several due process counts against defendants. See

1  Complaint at 3, para. 6. Bikle did not intend to invoke jurisdiction under the Fourth

2  Amendment, but rather the Fifth Amendments of the United States Constitution.

3      Bikle should be allowed to amend his request for an injunction to clarify

4  what is being alleged and requested, to wit:

5      "WHEREFORE, Bikle demands a permanent injunction against the

6  Defendants to halt all systemic actions of denial of due process and the systematic

7  and fraudulent violations of the separation of powers when dealing with Bikle on

8  any and all alleged criminal violations. The Defendants have refused to

9  acknowledge the unique role of the prosecuting attorney in exercising sole

10  discretion as to the initiation of criminal prosecution. It is well settled law that the

11  prosecuting attorney, of the executive branch, is the authority invested with the

12  authority to initiate criminal prosecution. Bikle will suffer irreparable harm by

13  denial of this injunction. He will suffer insult, degradation, and deprivation of

14  personhood by denial of this injunction. Bikle is likely to prevail in the causes of

15  action laid forth against the Defendants. The facts in this complaint make Bikle's

16  claims undeniable. Bikle has no other remedy at law to protect himself from parties

17  who it has been shown have conspired to deprive him of his fundamental rights.

18  Denial of Bikle's request for injunction will cause Bikle to bear a greatly

19  imbalanced harm. Bikle's harm will be loss of the right to due process, right to be

20  free from tortious conduct (fraud), damage to reputation, and assault upon

21  personhood. Denial of Bikle's injunction goes beyond economic injury. The costs

to the court on error later corrected to the favor of Defendants is not as great as the

1  costs to the court for error later corrected in Bikle's favor. Granting Bikle's request

2  for injunction conserves the fundamental rights established in the United State

3  Constitution no matter who prevails."

4      Bikle should be allowed to amend his complaint with regards to the 42 USC

5  1985(3) charges. Apparently, it was unclear to the District Court the way it was

6  presented. The class of persons being deprived of their rights include those

7  individuals who are cited by peace officers for allegedly violating vehicle code.

8  Bikle is a member of this class. <u>See</u> Complaint at paragraphs 16-18, 185. The right

9  that is being deprived from this class is the right to due process. <u>See</u> Complaint at

10 para. 15, 185. The individuals involved in depriving this class of persons of such a

11 right include the defendants. The defendants concerted actions of initiating

12 criminal prosecution and then holding criminal proceedings without jurisdiction,

13 while ignoring Bikle's vigorous and time-consuming efforts to terminate the

14 unlawful proceedings, violated Bikle's due process rights. <u>See</u> Complaint at

15 paragraphs 15, 16, 17, 21, 23, 24, 25, 27, 28, 32, 33, 36, 37, 38, 39, 41, 42, 48, 49,

16 53, 54, 55, 57, 58, 59, 60, 62, 63, 64, 66, 67, 69, 71, 72, 73, 74, 75, 77, 78.

17 Additional supporting facts are expected to be found in the process of discovery

18 which may include emails and written correspondences.

19     <u>Bikle should be allowed to amend his complaint, to clarify or add elements,</u>

20 <u>as permitted by law.</u>

21

**Argument**

27

## I.                    Statutory and State Constitutional Analysis

**1.        The District Court incorrectly decided the facts.**

(A)    The correct facts are that an individual authorized to initiate prosecution in a criminal action had not charged Bikle with any violations of the law. <u>See</u> Complaint at **15-18**, 59, 60, 63, **71, 72, 74**, 75, 78. Furthermore, Bikle's complaint did not indicate what alleged violations the peace officer wrote on the traffic citation. Traffic citations can be issued for alleged misdemeanors and/or infractions.  The District Court erred in presuming that Bikle was lawfully charged with an infraction. The District Court committed a fundamental error by incorrectly deciding that prosecution had been lawfully initiated against Bikle, by treating the traffic citation issued by a peace officer as a verified complaint and summons issued by an individual who is authorized to initiate prosecution in a criminal action in the name of the People of the State of California. The District Court built upon this error by determining that the conditions were met for granting the absolute immunity of all of the court personnel involved.

**2.        On the District Court's misinterpretation of the law**

<u>People v. Carlucci</u>, 23 Cal. 3d 249, 590 P.2d 15 (1979) was misinterpreted by the District Court with the issue at hand. Before a trial court can hold criminal proceedings without a prosecuting attorney present, that prosecuting attorney must decide to initiate criminal prosecution. <u>See</u> California Constitution, article V,

section 13. The following is an excerpt from that case regarding this scenario with a warning:

> "In the absence of a prosecuting attorney the citing officer routinely takes the stand and gives a narrative description of the events leading to the issuance of the citation. The defendant will then have full opportunity to cross-examine the officer and then may himself testify, and present such other evidence as may be probative and relevant. Under these circumstances we are satisfied that a trial judge should, within proper limits, be permitted to ask questions for the purpose of clarifying ambiguities and to insure that justice is done both to the accused and to the People, all this without jeopardizing the court's ability to act in a judicious, independent, detached, and neutral manner.
>
> **In approving this practice, however, we caution that the trial court must not undertake the role of either prosecutor or defense counsel.** "

This final warning was not heeded by the employees of the Superior Court at Bellflower. A prosecutor did not initiate prosecution and the trial court created a criminal proceeding without jurisdiction, which is reflected in the trial court record. Before the trial court can commence criminal proceedings, jurisdiction

29

1    must be conferred upon the court via a valid verified complaint and the filing of

2    proof of service of summons by the prosecuting attorney. In the case of <u>Ralph v.</u>

3    <u>Police Court</u>, 84 Cal. App. 2d 257 (1948) the court provided as follows:

4            "Penal code section 1426 [which codified the 5th amendment of

5            the constitution, and has been partially re-codified in Penal

6            Code Sections 740, 950, 952 and 959], provides as follows: **All**

7            **proceedings** and actions before a magistrate or police court or

8            municipal court, for a public offense of which such courts have

9            jurisdiction, **must be commenced by complaint under oath**,

10           setting forth the offense charged, with such particulars of **time,**

11           **place, person and property** as to enable the defendant to

12           understand distinctly the character of the offense complained of,

13           and to answer the complaint..."

14           "Unless waived, as provided by statute, the **filing of such**

15           **complaint is <u>essential</u> to the jurisdiction of the police court.**

16           That has been the law of this state for many years. It was stated

17           as follows in the case of <u>In re Williams</u>, 183 Cal. 11, 12 [190 P.

18           163]: "It goes without saying that **it is <u>essential</u> to the**

19           **jurisdiction of a police court** to put a person upon trial for a

20           public offense that charging such person with the commission

21           of such offense." (See also, <u>People v Brussel</u>, 122 Cal. App.

             Supp. 785 [7 p. 2d 403].) It is also the law in other jurisdictions.

**The rule, supported by many authorities,** is stated as follows in 22 *Corpus Juris Secundum*, pages 456, 457 section 303: The term "complaint" is a technical one descriptive of proceedings before magistrates. It is and has been defined to be the preliminary charge or accusation against an offender, made by a private person or an informer to a justice of peace or other proper officer, charging that the accused has violated the law. It has also been defined as a preliminary charge before a committing magistrate;...**The complaint is the <u>foundation of the jurisdiction of magistrate</u>,** and it performs the same office that an indictment or information does in superior courts."

3.      **The District Court applied the wrong law.**

(A)(1)The statute in the California Penal Code (Cal. Pen. Code) 959.1(c)(1),which was at the heart of <u>People v. Stapf</u>, provides as follows:

"(c) A magistrate or court is authorized to receive and file an accusatory pleading **in electronic form** if all of the following conditions are met:

(1) The accusatory pleading is issued in the name of, and transmitted by, a public prosecutor or law enforcement agency filing pursuant to Chapter 5c (commencing with Section 853.5) or Chapter 5d (commencing with Section 853.9), or by a clerk of the court with respect to complaints issued for the offenses of

31

failure to appear, pay a fine, or comply with an order of the court."

No accusatory pleading in **electronic form** was ever filed against Bikle. <u>See</u> Complaint at 10, para. 81. An altered copy of the notice to appear, which was different than the one issued to Bikle, was in the case file. Furthermore, Bikle appeared for all scheduled appearances and none of the alleged charges issued by the defendant clerk involved either failures to appear, pay a fine, or comply with an order of the court. <u>People v. Stapf</u> clearly does not apply to the immediate circumstances.

Even if the notice to appear had been transmitted in electronic form to the magistrate or court it failed to meet the following portions of the Cal. Pen. Code 959.1(c) :

"When transmitted in electronic form, the accusatory pleading shall be exempt from any requirement that it be subscribed by a natural person. **It is sufficient to satisfy any requirement that an accusatory pleading, or any part of it, be sworn to before an officer entitled to administer oaths, if the pleading, or any part of it, was in fact sworn to and the electronic form indicates which parts of the pleading were sworn to and the**

1    **name of the officer who administered the oath**."[emphasis

2    added]

3

4    There is absolutely no evidence in the trial court record that the notice to

5    appear, in its entirety or any part of it, was sworn to under oath administered

6    by an officer who is authorized to administer such an oath.

7        (A)(2)The Executive power of initiating prosecution is a part of the public

8    prosecutor's authority. The district attorney, a member of the executive branch of

9    government, can and should exercise discretion to decide which case to prosecute.

10    See Esteybar v. Municipal Court, 5 Cal.3d 119 at 127, 95 Cal. Rptr. 524, 485 P.2d

11    1140 (1971). The prosecution of criminal offenses on behalf of the people is the

12    sole responsibility of the public prosecutor. See Dix v. Superior Court, 53 Cal.3d

13    442 at 451, 279 Cal. Rptr. 834, 807 P.2d 1063 (1991). Prosecutorial discretion,

14    though recognized by statute in California, is found upon constitutional principles

15    of separation of powers and due process of law. The district attorneys unlimited

16    discretion in the crime-charging function has been uniformly recognized. See

17    People v. Wallace, 169 Cal. App.3d at 406, 215 Cal. Rptr. 203 (1985). The

18    prosecutor has discretion to decline to prosecute even where there is probable

19    cause to believe an individual has committed a crime. See Davis v. Municipal

20    Court, 46 Cal.3d 64 at 77, 249 Cal. Rptr. 300, 757, P.2d 11 (1988). That discretion

21    would be eliminated if the court, not the prosecutor, were allowed to commence the

prosecution since, once commenced, only the court has the authority to dismiss it.

33

1    See People v. Municipal Court, (Pellegrino) 27 Cal. App.3d 193 at 200, 103 Cal.

2    Rptr. 645 (1972). Just as the executive may not exercise judicial power, so the

3    judicial is prohibited from entering upon executive functions. See People v. Smith,

4    53 Cal. App.3d 655, at 659-660, 126 Cal. Rptr. 195 (1975).

5        A court clerk is a member of the Judicial branch. See Constitution of

6    California, article 6, section 4. A court clerk has no authority to initiate prosecution

7    of crimes, or public offenses, on the part of the People of the State of California.

8    The restriction of powers is plainly written in the California Constitution, article

9    III, section 3. There are no exemptions in the California Constitution stating that a

10   clerk of court shall, or may, initiate prosecution on behalf of the public for crimes

11   or offenses. Any such exemptions must be added to the California Constitution via

12   the methods that it provides. See Constitution of California, article 18, sections 1,

13   et seq. Decisions made by the Judicial branch do not create any such exemptions,

14   as there is no provision for such methods of creating exemptions in the

15   Constitution of California.

16

17       (A)(3)Finally, it is a violation of the separation of powers for the legislature

18   to enact such a statute, as it interferes with the powers of the executive branch to

19   determine who, within its authority, shall be delegated the responsibility of

20   discretion in the initiation of criminal prosecution. See California Constitution,

21   article III, section 3.

34

1

2      (A)(4)An accusatory pleading is a necessary prerequisite to the court's

3 jurisdiction. See Serna v. Superior Court, 40 Cal.3d 239, 254, 219 Cal. Rptr. 420,

4 707 P.2d 793 (1985); see also City of San Diego v. Municipal Court, 102 Cal.

5 App.3d 775, at 778, 162 Cal. Rptr. 420 (1980). Only the people may file an

6 accusatory pleading. See Hicks v. Board of Supervisors, 53 Cal. App.3d 228, at

7 240-241, 138 Cal. Rptr. 101 (1977); see also People v. Smith, 53 Cal. App.3d 655,

8 at 659-660, 126 Cal. Rptr. 195 (1975); see also People v. Municipal Court,

9 (Pellegrino) 27 Cal. App.3d 193 at 200, 103 Cal. Rptr. 645 (1972). Therefore, the

10 State, in order to have lawfully proceeded with the alleged action, must do so by

11 verified formal complaint which has been filed and properly served by the District

12 Attorney pursuant to Penal Code Sections 17(d)(1), 740 , and 853.9, as held in

13 Heldt v. Municipal Court, 163 Cal. App.3d 532 (1985) and numerous other cases.

14 In our common law judicial system, we rely upon a separation of roles to bring

15 about proper results. The courts role is to decide cases; the parties role is to bring

16 cases before the courts. See Municipal Court v. Superior Court, (Gonzalez) 5 Cal.

17 4th 1126 at 1131, 22 Cal. Rptr. 2d 504, 857 P.2d 325  (1993). A court has no

18 jurisdiction to proceed with the trial of an offense without a valid indictment or

19 information. See Jones v. Superior Court, 96 Cal. App.3d 390, 157 Cal. Rptr. 809

20 (1979).

21

(B)    The discretion to initiate prosecution is not a ministerial action.

"A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion, on the other hand, is the power conferred on public functionaries to act officially according to the dictates of their own judgment. [Citation.]" (Rodriquez v. Solis, 1 Cal. App.4th 495, 501-502.,(1991))

Judicial absolute immunity can not be granted to a court clerk for performing an exclusively executive branch function, which is obviously outside of the scope of clerk employment. When a duty is purely ministerial in character, not only is the public officer without power to exercise any discretion in determining whether or not to perform the duty, but exercise of the duty may be compelled by mandamus. (Id., at p. 501; see also State of California v. Superior Court, 12 Cal.3d 237, 247. (1974)) If the filing of a criminal charge is an action within the "ministerial" duties of a court clerk then it is that a clerk not only may, but must file such charges in every case, without the exercise of any discretion whether to file such charges. If the clerk fails to file such charges, he may be forced to do so by a writ of mandate.

36

1    The settled law concerning the necessary discretion involved in the

2    prosecution of criminal cases shows that a statute does not and could not place a

3    ministerial duty upon a court clerk to file criminal charges.

4    It is, rather, patently obvious that the question of whether a criminal charge

5    shall be filed remains a matter of discretion, as it always has been, and must be as a

6    matter of due process as discussed above. For example, shall a criminal charge be

7    filed if a defendant fails to appear on the date specified on a ticket, but appears one

8    day later? Shall a criminal charge be filed if the failure to appear is upon a matter

9    merely requiring repair of equipment? Shall a criminal charge be filed when a

10   defendant has appeared in court, but is late with the payment of a fine? Shall an

11   accused felon's failure to appear be charged as a misdemeanor or a felony (see Cal.

12   Pen. Code § 1320(b))? Obviously, discretion will be exercised in all of these

13   situations, and more.

14   Indeed, the entire history of the prosecutorial function in Anglo-American

15   jurisprudence is that the decision whether or not to commence a criminal action is

16   one involving the exercise of discretion. (See Dix v. Superior Court, 53 Cal.3d 442,

17   451-452.) Even when an offense has undoubtedly been committed, the prosecutor

18   retains the discretion not to file charges. Thus, the prosecutorial function is exactly

19   the opposite of a ministerial duty:

20        "The public prosecutor has no enforceable 'duty' to conduct

21            criminal proceedings in a particular fashion. On the contrary,

1          his obligation is to exercise exclusive professional discretion

2          over the prosecutorial function." (Id., 53 Cal.3d at p. 453.)

3          The question then becomes whose discretion is being exercised? It would

4    take the most narrow of blinders to come to the conclusion that a court clerk can or

5    will make such decisions independent from the court and judges by whom the clerk

6    is employed. It is, rather, obvious that when such discretion is exercised, it is

7    exercised in the manner directed by the judiciary. Even if some court clerk

8    somewhere was initiating criminal charges without the authorization of his

9    employer, it still remains the fact that the clerk is subject to the control of the

10   judiciary, who may intervene in that process at any time.

11         It is thus certain that the filing of criminal charges is not a "ministerial

12   action," but is an exercise of discretion. When such charges are filed by a court

13   clerk, it is an exercise of discretion by the judiciary, a function reserved to the

14   executive. The Court of Appeal in People v. Staph. opines that it is permissible for

15   the judiciary to exercise functions within the exclusive purview of the executive,

16   because the separation-of-powers doctrine is not applied "in a rigid manner," citing

17   Davis v. Municipal Court (1988) 46 Cal.3d 64, 76. (Slip opn., pp. 6-7.) However,

18   the Court of Appeal has plainly misunderstood both the doctrine and Davis.

19         What the California Supreme Court held in Davis was not that one branch of

20   government could exercise functions reserved to another, but that some functions

21   might be characterized as properly exercised by more than one branch. The Davis

     case involved legislation giving the District Attorney the power to approve of local

38

1   diversion programs (not involving the question of who should be referred to an

2   approved program). This court held that while approval of such programs could be

3   a legislative function, "The exercise of such quasi-legislative authority, even when

4   the policy decision that is made by the executive or judicial official is one that

5   could have been made by the Legislature, has never been thought to violate the

6   separation-of-powers doctrine." (Id., 46 Cal.3d at p. 76.) The court concluded that

7   "... the Legislature simply recognized that pretrial diversion is closely and

8   intimately related to the district attorney's traditional executive authority over the

9   prosecutorial process, and determined, as a matter of policy, not to permit local

10  diversion programs to be implemented over the district attorney's objection." (Id.,

11  at p. 77.)

12      The matter at issue herein is quite different from that presented in Davis. The

13  initiation of criminal proceedings is not a function which may be exercised by the

14  judiciary or the Legislature in any case. It has, rather, been established law for

15  decades that the initiation of criminal proceedings is a function exclusively within

16  the control of the executive.

17

18      Finally, if the Court of Appeal, in People v. Staph, were correct that court

19  clerks are not acting as members of the judicial branch when initiating criminal

20  prosecutions, then it would have to be concluded that a clerk would be acting as a

21  private citizen when filing charges. However, private citizens have no more

    authority to institute criminal proceedings than do judges. This rule was confirmed

    39

by the California Supreme Court in its most recent discussion of this issue in <u>Dix v.</u>

<u>Superior Court</u>, supra, 53 Cal. 3d 442. In that case, it was claimed that the victim

of a criminal offense had standing to compel a court to sentence a defendant to

prison. The court disagreed, stating that "The prosecution of criminal offenses on

behalf of the People is the <u>sole</u> responsibility of the public prosecutor." (Id., at p.

451, emphasis added.) The court went on to state that:

> "The prosecutor ordinarily has <u>sole discretion</u> to determine
> whom to charge, what charges to file and pursue, and what
> punishment to seek. [Citations.] <u>No private citizen</u>, however
> personally aggrieved, <u>may institute criminal proceedings</u>
> <u>independently</u> [citations] , and the prosecutor's own discretion is
> not subject to judicial control at the behest of persons other than
> the accused. [Citations.] <u>An individual exercise of prosecutorial</u>
> <u>discretion</u> is presumed to be ' "legitimately founded on the
> complex considerations necessary for the effective and efficient
> administration of law enforcement ...." ' [Citations.]" (ld., 53
> Cal.3d at p. 451, emphasis added.)

This court also stated in <u>Dix</u> that to allow a private citizen to intervene in

sentencing matters, "would undermine the People's status as <u>exclusive party</u>

<u>plaintiff</u> in criminal actions, interfere with the prosecutor's broad discretion in

criminal matters, and <u>disrupt the orderly administration of justice.</u>" (Id., 53 Cal.3d

at p. 454, emphasis added.)

40

1    There is absolutely no authority in support of the proposition that a function

2    exclusively within the control of one branch of government may, nevertheless, be

3    exercised by another branch, or by private citizens. One could not say, for

4    example, that it would be proper for the judiciary or private citizens to enact

5    legislation, so long as the legislation involved only minor matters. Thus, the

6    initiation of criminal proceedings is not a function, such as that addressed in Davis,

7    which might properly be exercised by any other branch of government. As stated

8    in Dix, initiating criminal proceedings is a matter within the sole and exclusive

9    control of the executive, to the exclusion of any other branch of government and of

10    private citizens. When criminal proceedings are initiated by, or at the direction of,

11    the judiciary, the separation-of-powers doctrine is violated. When criminal

12    proceedings are initiated by private citizens, our entire constitutional scheme is

13    violated. The Court of Appeal's contrary ruling, in People v. Staph, is simply

14    wrong, and must be abrogated.

15    4.    **There are other reasons why the District Court's judgement was wrong.**

16    A criminal complaint has specific properties, most of which were not

17    fulfilled by the notice to appear. Concerns about the "alleged" criminal complaint

18    were explicitly mentioned in Bikle's complaint and the motions filed in the

19    Superior Court of California at Bellflower. See Complaint at para. 15, 16, 17, 18,

20    21, 25, 30, 34, 59, 60, 63, **71**, **74**, and **75**.

21    A complaint is a form of an accusatory pleading. See Cal. Pen. Code §

691(c). Except as otherwise provided by law, all misdemeanors and infractions

41

must be prosecuted by written complaint under oath subscribed by the complainant. See Cal. Pen. Code § 740. There was no evidence that a complaint had been filed which had been subscribed by a prosecuting attorney who was under oath.

Whenever the written notice to appear has been prepared on a form approved by the Judicial Council, an exact and legible duplicate copy of the notice when filed with the magistrate shall constitute a complaint to which the defendant may enter a plea and, if the notice to appear is verified, upon which a warrant may be issued. See Cal. Pen. Code § 853.9(b); see also Cal. Veh. Code § 40513(b). Any random individual cannot simply prepare a notice to appear on such a form to initiate prosecution of criminal charges. This statute must be read in light of who has been charged with the discretion to initiate prosecution, which is the prosecuting attorney. See California Government Code § 26500; see also Cal. Gov. Code § 26502. The words "prosecuting attorney" include any attorney, whether designated as district attorney, city attorney, city prosecutor, prosecuting attorney, or by any other title, having by law the right or duty to prosecute, on behalf of the people, any charge of a public offense. See Cal. Pen. Code §691(d) The written notice to appear was prepared, by a peace officer, on a form approved by the Judicial Council. See Complaint at para. 16-18. There are no exemptions allowing a peace officer to complete such a form, which is used in lieu of a verified complaint, to initiate prosecution. Even if the legislature included an express exemption for a peace officer to utilize such a process it would be a violation of the

42

1   separation of powers, as the legislature would then be deciding who may exercise

2   the executive branch discretionary function of initiating prosecution. The notice to

3   appear was not verified.

4        The first pleading on the part of the people in a misdemeanor or infraction

5   case is the complaint except as otherwise provided by law. See Cal. Pen. Code §

6   949. The accusatory pleading must contain: The Title of the action, specifying the

7   name of the court to which the same is presented, and the names of the parties; A

8   **statement** of the public offense or offenses charged therein. See Cal. Pen. Code §

9   950. In this instance, the accusatory pleading did not contain the title of the action,

10  the names of the parties, and a statement of the public offense or offenses charged

11  therein. See Cal. Pen. Code § 952. The accusatory pleading did not contain any

12  counts or statements that the accused had committed some sort of public offense.

13       The accusatory pleading is sufficient if it can be understood therefrom: If a

14  complaint, that it is made and subscribed by some natural person and sworn to

15  before some officer entitled to administer oaths. See Cal. Pen. Code § 959. The

16  accusatory pleading was subscribed by a natural person; however, there is no

17  evidence that it was sworn to before some officer entitled to administer oaths. The

18  accusatory pleading was insufficient.

19       The District Court failed to hold any evidentiary hearings to determine if the

20  notice to appear met the aforementioned properties required of a valid criminal

21  complaint, which would confer jurisdiction over the case to the Superior Court.

Absent a valid complaint, there is no controversy, or potential case, presented to

43

1   confer subject-matter jurisdiction upon the Superior Court. Nor did the District

2   Court make a determination as to whether it, if it was even a valid complaint, had

3   been properly served with a summons upon Bikle. See Cal. Gov. Code § 22. These

4   determinations are required before absolute immunity can be granted.

5

6   **II.**                              **Federal Law Analysis**

7   3.      **The District Court applied the wrong law.**

8

9          (B)      "When the Supreme Court first formulated the "clear absence"

10  standard, however, it stated that the principle of immunity applied when there was

11  "jurisdiction of both subject and person."" Bradley v. Fisher, 80 U.S. (13 Wall.)

12  335, 352 (1872), 20 L.Ed. 646. Said case further provided:

13          "Admit that the court may proceed summarily, still summary

14          jurisdiction is not arbitrary power; and a summons and

15          opportunity of being heard is a fundamental principle of all

16          justice. The principle has been declared by this court in Ex parte

17          Garland, to be specifically applicable to the case of disbarring

18          an attorney; and so declared for obvious reasons. **Without then**

19          **having summoned Mr. Bradley, and having given to him an**

20          **opportunity to be heard, the court had no jurisdiction of**

21          **Mr. Bradley's person or of any case relating to him.** It is not

44

1   enough that it have jurisdiction over the subject-matter of the

2   complainant generally; it must have jurisdiction over the

3   particular case, and if it have not, the judgment is void ab initio.

4   The whole subject is set forth in Smith's Leading Cases, where

5   the authorities are collected and the principle deduced, that

6   when the record shows that the court has proceeded without

7   notice to the party condemned, the judgment will be void, and

8   may be disregarded in any collateral proceeding."

9   **Bikle was never issued a valid summons**, requested for and signed by the

10  prosecuting attorney, and signed by a judge or clerk at the Superior Court of

11  California at Bellflower. The court failed to obtain in personam jurisdiction over

12  Bikle. Bradley v. Fisher goes on to state:

13  "In the present case we have looked into the authorities and are

14  clear, from them, as well as from the principle on which any

15  exemption is maintained, that the qualifying words used were

16  not necessary to a correct statement of the law, and that judges

17  of courts of superior or general jurisdiction are not liable to civil

18  actions for their judicial acts, even when such acts are in excess

19  of their jurisdiction, and are alleged to have been done

20  maliciously or corruptly. **A distinction must be here observed**

21  **between excess of jurisdiction and the clear absence of all**

45

**jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.** But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial **of a party charged with such act,** or

46

should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked."

[emphasis added]

There was no evidence in the record of a verified complaint, filed by a prosecuting attorney, charging Bikle with any criminal or public offense violations or proofs of service for any such complaint and a summons. Commissioner Pearce and Judge Sanchez were both aware, based on the record, that they did not have jurisdiction. The District Court erred by not applying the standard set forth in <u>Bradley v. Fisher</u>. Application of said standard to the facts asserted leaves no room to conclude that absolute immunity could be granted to any of the defendants. All jurisdiction was not conferred upon the Superior Court of California at Bellflower.

Additional support in adhering to the standard can be found in the case of <u>Rankin v. Howard</u>, 633 F.2d 844 (9th Cir. 1980) where the court provided as follows:

"The *Stump* Court identified two specific factors to be considered in determining whether an act is "judicial". "the

47

nature of the act itself, *i. e.*, whether it is a function normally performed by a judge, and ... the expectations of the parties, *i. e.*, whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1107. We also consider the underlying purpose of judicial immunity. Gregory v. Thompson, 500 F.2d 59, 63 (9th Cir.1974).

Although a party conniving with a judge to predetermine the outcome of a judicial proceeding may deal with him in his "judicial capacity," the other party's expectation, *i. e.*, judicial impartiality, is actively frustrated by the scheme. In any event, the agreement is not "a function normally performed by a judge." It is the antithesis of the "principled and fearless decision-making" that judicial immunity exists to protect. See Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); Gregory v. Thompson, 500 F.2d at 63.

Rankin alleged that Judge Zeller agreed in advance with the others to rule favorably on the petition. We conclude that a judge's private, prior agreement to decide in favor of one party is not a judicial act. See also Lopez v. Vanderwater, 620 F.2d 1229, 1235-37 (7th Cir.1980) (judge not immune for "prosecutorial" acts prior to biased decision). If the alleged agreement manifests Judge Zeller's participation in a

48

conspiracy, then proof of the agreement could form the basis of liability whether or not he is immune from liability for subsequent judicial acts."

"Although the Supreme Court acknowledged in *Stump v. Sparkman* that Judge Stump may have committed "grave procedural errors," 435 U.S. at 359, 98 S.Ct. at 1106, it did not explicitly consider whether he acted in the clear absence of personal jurisdiction or whether such action would be protected by judicial immunity. The question appears to be one of first impression.

The district court here assumed that a court arguably having subject matter jurisdiction does not act in the "clear absence of all jurisdiction." **When the Supreme Court first formulated the "clear absence" standard, however, it stated that the principle of immunity applied when there was "jurisdiction of both subject and person."** Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 352 (1872), 20 L.Ed. 646.

**An absence of personal jurisdiction may be said to destroy "all jurisdiction" because the requirements of subject matter and personal jurisdiction are conjunctional. Both**

49

1    **must be met before a court has authority to adjudicate the**

2    **rights of parties to a dispute.**

3    If a court lacks jurisdiction over a party, then it lacks "all

4    jurisdiction" to adjudicate that party's rights, whether or not the

5    subject matter is properly before it. <u>See, e. g., Kulko v. Superior</u>

6    <u>Court</u>, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132

7    (1978) ("[i]t has long been the rule that a valid judgment

8    imposing a personal obligation or duty in favor of the plaintiff

9    may be entered only by a court having jurisdiction over the

10   person of the defendant") (citations omitted); <u>In re Wellman</u>, 3

11   Kan.App. 100, 45 P. 726, 727 (1896) (*ex parte* guardianship

12   proceeding would be a "flagrant violation" of due process,

13   rendering any order null and void).

14   Because the limits of personal jurisdiction constrain judicial

15   authority, **acts taken in the absence of personal jurisdiction**

16   **do not fall within the scope of legitimate decisionmaking**

17   **that judicial immunity is designed to protect.** <u>See</u> <u>Gregory v.</u>

18   <u>Thompson</u>, 500 F.2d at 63. **We conclude that a judge who acts**

19   **in the clear and complete absence of personal jurisdiction**

20   **loses his judicial immunity.**

21   It is not sufficient that the court in fact lacked jurisdiction.

Because jurisdictional issues are often difficult to resolve,

50

judges are entitled to decide such issues without fear of reprisal should they exceed the precise limits of their authority. <u>Stump v. Sparkman</u>, 435 U.S. at 356, 98 S.Ct. at 1104. Judges of courts of general jurisdiction are not liable for judicial acts merely "in excess of their jurisdiction," even when the acts "are alleged to have been done maliciously or corruptly." *Id.* (quoting <u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) at 347).

**But when a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost**. <u>See</u> <u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) at 351 ("when the want of jurisdiction is known to the judge, no excuse is permissible"); <u>Turner v. Raynes</u>, 611 F.2d 92, 95 (5th Cir.1980) (*Stump* is consistent with the view that "a clearly inordinate exercise of unconferred jurisdiction by a judge-one so crass as to establish that he embarked on it either knowingly or recklessly-subjects him to personal liability").

If, as alleged, Judge Zeller knew the jurisdictional allegations to be fraudulent, or if valid Kansas statutes expressly foreclosed personal jurisdiction over a proposed ward in *ex parte* proceedings for temporary guardianship, then the judge acted in the clear and complete absence of personal jurisdiction. If his

51

acts were part of a conspiracy, he is properly held responsible for the consequences."

Footnote 10. "The Court did say that "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." <u>Stump v. Sparkman</u>, 435 U.S. at 356, 98 S.Ct. at 1104. **This might imply that subject matter jurisdiction is sufficient to confer immunity, but it was said in the apparent absence of a specific challenge to personal jurisdiction. Further, the statement did not purport to exhaust the bases on which immunity could be overcome.** It did not, for example, mention the requirement that the "challenged action" be "judicial" in character. This requirement was discussed later in the opinion. *See id.* at 360-64, 98 S.Ct. at 1106-1108. Although the language of *Stump* is broad, we cannot infer that the Court there decided an issue it did not explicitly consider."[emphasis added]

It bears repeating, the District Court erred by not applying the standard set forth in the aforementioned cases. If the standard was applied, with the correctly interpreted facts, there can be no denying that the court employees cannot be granted absolute immunity and they can be held liable for damages incurred by Bikle.

52

1

2                              **CONCLUSION**

3

4          Plaintiff requests that the order for dismissal with prejudice be vacated and

5   that this case be remanded to the lower court to proceed, with out granting absolute

6   immunity, against all defendants or, in the alternative, that the order for dismissal

7   with prejudice be vacated and that this case be remanded to the lower court to hold

8   an evidentiary hearing to determine the applicability of absolute immunity, for

9   each defendant, in light of the evidence that will be provided by Bikle and that

10  Bikle be provided with a court order demanding that the Superior Court of

11  California at Bellflower provide the original alleged complaint that the court clerk

12  used to initiate prosecution and criminal proceedings. Plaintiff also requests that

13  this court grant any other and further relief to which he is found to be entitled.

14

15  Respectfully Submitted,

16       DATED: February 27, 2014:

17

18                                              Philip Christian Bikle, Pro Se

19

20

21

                                                                              53

# ADDENDUM

## CONSTITUTIONAL PROVISIONS AND STATUTES

United States Constitution, Amendment V:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

United States Constitution, Amendment VI:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory

1          process for obtaining witnesses in his favor, and to have the

2          assistance of counsel for his defense."

3  United States Constitution, Amendment XIV, Section 1:

4          "All persons born or naturalized in the United States, and

5          subject to the jurisdiction thereof, are citizens of the United

6          States and of the state wherein they reside. No state shall make

7          or enforce any law which shall abridge the privileges or

8          immunities of citizens of the United States; nor shall any state

9          deprive any person of life, liberty, or property, without due

10         process of law; nor deny to any person within its jurisdiction

11         the equal protection of the laws."

12         <u>CALIFORNIA CONSTITUTIONAL PROVISIONS AND STATUTES</u>

13  California Constitution, article III, section 3:

14         "The powers of state government are legislative, executive, and

15         judicial. Persons charged with the exercise of one power may

16         not exercise either of the others except as permitted by this

17         constitution."

18  California Constitution, article V, section 13:

19         "Subject to the powers and duties of the Governor, the Attorney

20         General shall be the chief law officer of the State.  It shall be

21         the duty of the Attorney General to see that the laws of the State

          are uniformly and adequately enforced.  The Attorney General

1    shall have direct supervision over every district attorney and

2    sheriff and over such other law enforcement officers as may be

3    designated by law, in all matters pertaining to the duties of their

4    respective offices, and may require any of said officers to make

5    reports concerning the investigation, detection, prosecution, and

6    punishment of crime in their respective jurisdictions as to the

7    Attorney General may seem advisable.   Whenever in the

8    opinion of the

9    Attorney General any law of the State is not being adequately

10    enforced in any county, it shall be the duty of the Attorney

11    General to prosecute any violations of law of which the superior

12    court shall have jurisdiction, and in such cases the Attorney

13    General shall have all the powers of a district attorney.  When

14    required by the public interest or directed by the Governor, the

15    Attorney General shall assist any district attorney in the

16    discharge of the duties of that office."

17   California Government Code § 22:

18    ""Process" includes a writ or summons issued in the course of

19    judicial proceedings of either a civil or criminal nature."

20   California Government Code § 26500:

21    "The district attorney is the public prosecutor, except as

     otherwise provided by law.

> The public prosecutor shall attend the courts, and within his or
> her discretion shall initiate and conduct on behalf of the people
> all prosecutions for public offenses."

California Government Code § 26502:

> "The district attorney **shall** draw all indictments and
> **informations**."

California Penal Code § 17(d):

> "A violation of any code section listed in Section 19.8 is an
> infraction subject to the procedures described in Sections 19.6
> and 19.7 when:
>
> (1) The prosecutor files a complaint charging the offense as
> an infraction unless the defendant, at the time he or she is
> arraigned, after being informed of his or her rights, elects to
> have the case proceed as a misdemeanor"

California Penal Code § 19:

> "Except in cases where a different punishment is prescribed by
> any law of this state, every offense declared to be a
> misdemeanor is punishable by imprisonment in the county jail
> not exceeding six months, or by fine not exceeding one
> thousand dollars ($1,000), or by both."

California Penal Code § 691(c):

57

1    "The words "accusatory pleading" include an indictment, an
2    information, an accusation, and a complaint."

3    California Penal Code § 691(d):

4    "The words "prosecuting attorney" include any attorney,
5    whether designated as district attorney, city attorney, city
6    prosecutor, prosecuting attorney, or by any other title, having by
7    law the right or duty to prosecute, on behalf of the people, any
8    charge of a public offense."

9    California Penal Code § 740:

10
11    "Except as otherwise provided by law, all misdemeanors and
      infractions must be prosecuted by written complaint under oath
12    subscribed by the complainant. Such complaint may be verified
13    on information and belief."
14

15    California Penal Code § 853.9:

16    "(a) Whenever written notice to appear has been prepared,
17    delivered, and filed by an officer or the prosecuting attorney
18    with the court pursuant to the provisions of Section 853.6 of
19    this code, an exact and legible duplicate copy of the notice
20    when filed with the magistrate, in lieu of a verified complaint,
21    shall constitute a complaint to which the defendant may plead
      "guilty" or "nolo contendere."

58

1    If, however, the defendant violates his or her promise to

2    appear in court, or does not deposit lawful bail, or pleads other

3    than "guilty" or "nolo contendere" to the offense charged, a

4    complaint shall be filed which shall conform to the provisions

5    of this code and which shall be deemed to be an original

6    complaint; and thereafter proceedings shall be had as provided

7    by law, except that a defendant may, by an agreement in

8    writing, subscribed by him or her and filed with the court,

9    waive the filing of a verified complaint and elect that the

10   prosecution may proceed upon a written notice to appear.

11   (b) Notwithstanding the provisions of subdivision (a) of this

12   section, whenever the written notice to appear has been

13   prepared on a form approved by the Judicial Council, an exact

14   and legible duplicate copy of the notice when filed with the

15   magistrate shall constitute a complaint to which the defendant

16   may enter a plea and, if the notice to appear is verified, upon

17   which a warrant may be issued. If the notice to appear is not

18   verified, the defendant may, at the time of arraignment, request

19   that a verified complaint be filed.

20   California Penal Code § 949:

21   "The first pleading on the part of the people in the superior

     court in a felony case is the indictment, information, or the

59

complaint in any case certified to the superior court under Section 859a. The first pleading on the part of the people in a misdemeanor or infraction case is the complaint except as otherwise provided by law. The first pleading on the part of the people in a proceeding pursuant to Section 3060 of the Government Code is an accusation."

California Penal Code § 950:

"The accusatory pleading **must contain**:

1. The Title of the action, specifying the name of the court to which the same is presented, and the names of the parties;

2. A **statement** of the public offense or offenses charged therein."

California Penal Code § 952:

"In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. In charging theft it

60

shall be sufficient to allege that the defendant unlawfully took the labor or property of another."

California Penal Code § 959:

"The accusatory pleading is sufficient if it can be understood therefrom:

1. That it is filed in a court having authority to receive it, though the name of the court be not stated.

2. If an indictment, that it was found by a grand jury of the county in which the court was held, or if an information, that it was subscribed and presented to the court by the district attorney of the county in which the court was held.

3. If a complaint, that it is made and subscribed by some natural person and sworn to before some officer entitled to administer oaths.

4. That the defendant is named, or if his name is unknown, that he is described by a fictitious name, with a statement that his true name is to the grand jury, district attorney, or complainant, as the case may be, unknown.

5. That the offense charged therein is triable in the court in which it is filed, except in case of a complaint filed with a magistrate for the purposes of a preliminary examination.

1      6. That the offense was committed at some time prior to the

2         filing of the accusatory pleading."

3    California Penal Code § 959.1:

4         (a) Notwithstanding Sections 740, 806, 949, and 959 or any

5         other law to the contrary, a criminal prosecution may be

6         commenced by filing an accusatory pleading in electronic form

7         with the magistrate or in a court having authority to receive it.

8         (b) As used in this section, accusatory pleadings include, but

9         are not limited to, the complaint, the information, and the

10        indictment.

11        (c) A magistrate or court is authorized to receive and file an

12        accusatory pleading in electronic form if all of the following

13        conditions are met:

14        (1) The accusatory pleading is issued in the name of, and

15        transmitted by, a public prosecutor or law enforcement agency

16        filing pursuant to Chapter 5c (commencing with Section 853.5)

17        or Chapter 5d (commencing with Section 853.9), or by a clerk

18        of the court with respect to complaints issued for the offenses of

19        failure to appear, pay a fine, or comply with an order of the

20        court.

21

1      (2) The magistrate or court has the facility to electronically

2      store the accusatory pleading for the statutory period of record

3      retention.

4      (3) The magistrate or court has the ability to reproduce the

5      accusatory pleading in physical form upon demand and

6      payment of any costs involved.

7      An accusatory pleading shall be deemed to have been filed

8      when it has been received by the magistrate or court.

9      When transmitted in electronic form, the accusatory pleading

10     shall be exempt from any requirement that it be subscribed by a

11     natural person. It is sufficient to satisfy any requirement that an

12     accusatory pleading, or any part of it, be sworn to before an

13     officer entitled to administer oaths, if the pleading, or any part

14     of it, was in fact sworn to and the electronic form indicates

15     which parts of the pleading were sworn to and the name of the

16     officer who administered the oath.

17     (d) Notwithstanding any other law, a notice to appear issued

18     on a form approved by the Judicial Council may be received

19     and filed by a court in electronic form, if the following

20     conditions are met:

21     (1) The notice to appear is issued and transmitted by a law

enforcement    agency    prosecuting    pursuant    to    Chapter    5c

63

1    (commencing with Section 853.5) or Chapter 5d (commencing

2    with Section 853.9) of Title 3 of Part 2 of this code, or Chapter

3    2 (commencing with Section 40300) of Division 17 of the

4    Vehicle Code.

5        (2) The court has all of the following:

6        (A) The ability to receive the notice to appear in electronic

7    format.

8        (B) The facility to electronically store an electronic copy and

9    the data elements of the notice to appear for the statutory period

10    of record retention.

11        (C) The ability to reproduce the electronic copy of the notice

12    to appear and those data elements in printed form upon demand

13    and payment of any costs involved.

14        (3) The issuing agency has the ability to reproduce the notice

15    to appear in physical form upon demand and payment of any

16    costs involved.

17        (e) A notice to appear that is received under subdivision (d) is

18    deemed to have been filed when it has been accepted by the

19    court and is in the form approved by the Judicial Council.

20        (f) If transmitted in electronic form, the notice to appear is

21    deemed to have been signed by the defendant if it includes a

digitized facsimile of the defendant's signature on the notice to

64

1              appear. A notice to appear filed electronically under subdivision

2              (d) need not be subscribed by the citing officer. An

3              electronically submitted notice to appear need not be verified by

4              the citing officer with a declaration under penalty of perjury if

5              the electronic form indicates which parts of the notice are

6              verified by that declaration and the name of the officer making

7              the declaration."

8

9   California Vehicle Code § 40513:

10            "(a) Whenever written notice to appear has been prepared,

11           delivered, and filed with the court, an exact and legible

12           duplicate copy of the notice when filed with the magistrate, in

13           lieu of a verified complaint, shall constitute a complaint to

14           which the defendant may plead "guilty" or "nolo contendere."

15             If, however, the defendant violates his or her promise to

16           appear in court or does not deposit lawful bail, or pleads other

17           than "guilty" or "nolo contendere" to the offense charged, a

18           complaint shall be filed that shall conform to Chapter 2

19           (commencing with Section 948) of Title 5 of Part 2 of the Penal

20           Code, which shall be deemed to be an original complaint, and

21           thereafter proceedings shall be had as provided by law, except

that a defendant may, by an agreement in writing, subscribed by

1    him or her and filed with the court, waive the filing of a

2    verified complaint and elect that the prosecution may proceed

3    upon a written notice to appear.

4         (b) Notwithstanding subdivision (a), whenever the written

5    notice to appear has been prepared on a form approved by the

6    Judicial Council, an exact and legible duplicate copy of the

7    notice when filed with the magistrate shall constitute a

8    complaint to which the defendant may enter a plea and, if the

9    notice to appear is verified, upon which a warrant may be

10   issued. If the notice to appear is not verified, the defendant

11   may, at the time of arraignment, request that a verified

12   complaint be filed. In the case of an infraction violation in

13   which the defendant is a minor, the defendant may enter a plea

14   at the arraignment upon a written notice to appear.

15   Notwithstanding any other provision of law, in the case of an

16   infraction violation, no consent of the minor is required prior to

17   conducting the hearing upon a written notice to appear."

18

19

20

21

66

**Form 6.    Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains <u>10916</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* <u>OpenOffice Version 3.3.0</u> *(state font size and name of type style)* <u>14-point minimum, Times New Roman</u>, *or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ .

Signature | Philip C. Bikle    *Wm C. Bikle Prose*

~~Attorney for~~ |

Date | Feb 27, 2014    *Feb 27, 2014*





1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   PHILIP C. BIKLE,              ) Case No. SACV 13-0911-DOC (JPR)
                                    )
12              Plaintiff,          )
                                    ) ORDER DISMISSING COMPLAINT WITH
13          vs.                     ) PREJUDICE
                                    )
14   DOE 1-9 et al.,                )
                                    )
15              Defendants.         )
                                    )
16   _____ )

17        Plaintiff filed this civil rights action pro se on June 19,

18   2013, after having been granted leave to proceed in forma

19   pauperis.  He alleges violations of 42 U.S.C. §§ 1983, 1985(3),

20   and 1986 as well as various state tort-law claims stemming from

21   when he was issued a traffic ticket, appeared in court to fight

22   the ticket, and had various motions he filed either denied or not

23   heard by the state superior court.  (See Compl. at 4-11.)  He

24   names as defendants "Traffic Supervisor Martha," Commissioner

25   Michael Pearce, Judge Deborah Sanchez, the Superior Court of the

26   State of California at Bellflower, and unnamed employees of the

27   superior court Does 1-9.  Plaintiff seeks injunctive relief "to

28   halt all systemic acts of denial of due process against members

                                    1

1  of the public," compensatory damages, and punitive damages.

2  (Compl. at 36-37.)

3      After screening the Complaint under 28 U.S.C. § 1915(e)(2)

4  prior to ordering service, the Court finds that it is frivolous

5  and fails to state civil rights violations upon which relief

6  might be granted.  Because it is clear that none of the

7  deficiencies of the Complaint are capable of being cured by

8  amendment, it is dismissed without leave to amend.  <u>See Cook,</u>

9  <u>Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.</u>, 911 F.2d

10  242, 247 (9th Cir. 1990) (per curiam); <u>cf. Lopez v. Smith</u>, 203

11  F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (holding that pro se

12  litigant must be given leave to amend complaint unless absolutely

13  clear deficiencies cannot be cured by amendment).

14              **STANDARD OF REVIEW**

15      The Court's screening of a complaint under 28 U.S.C.

16  § 1915(e)(2) is governed by the following standards.  A complaint

17  may be dismissed as a matter of law for failure to state a claim

18  "where there is no cognizable legal theory or an absence of

19  sufficient facts alleged to support a cognizable legal theory."

20  <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 622 F.3d 1035,

21  1041 (9th Cir. 2010); <u>O'Neal v. Price</u>, 531 F.3d 1146, 1151 (9th

22  Cir. 2008).  In considering whether a complaint states a claim, a

23  court must accept as true all the factual allegations in it.

24  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173

25  L. Ed. 2d 868 (2009); <u>Hamilton v. Brown</u>, 630 F.3d 889, 892-93

26  (9th Cir. 2011).  The court need not accept as true, however,

27  "allegations that are merely conclusory, unwarranted deductions

28  of fact, or unreasonable inferences."  <u>In re Gilead Scis. Sec.</u>

1  Litig., 536 F.3d 1049, 1055 (9th Cir. 2008); see also Shelton v.

2  Chorley, 487 F. App'x 388, 389 (9th Cir. 2012).  The court also

3  need not accept allegations that are "fantastic or delusional,"

4  "fanciful," or "rise to the level of the irrational or wholly

5  incredible."  Denton v. Hernandez, 504 U.S. 25, 32-33, 112 S. Ct.

6  1728, 1733, 118 L. Ed. 2d 340 (1992).  Although a complaint need

7  not include detailed factual allegations, it "must contain

8  sufficient factual matter, accepted as true, to 'state a claim to

9  relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678

10  (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.

11  Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  A claim is facially

12  plausible when it "allows the court to draw the reasonable

13  inference that the defendant is liable for the misconduct

14  alleged."  Iqbal, 556 U.S. at 678.  "A document filed pro se is

15  to be liberally construed, and a pro se complaint, however

16  inartfully pleaded, must be held to less stringent standards than

17  formal pleadings drafted by lawyers."  Erickson v. Pardus, 551

18  U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)

19  (internal quotation marks and citations omitted).

20      Moreover, pursuant to Federal Rule of Civil Procedure

21  12(h)(3), the Court must dismiss an action "[i]f the court

22  determines at any time that it lacks subject-matter jurisdiction

23  . . . ."  See also Fed. R. Civ. P. 12(b)(1) (providing that

24  complaint may be dismissed for lack of subject-matter

25  jurisdiction).  Federal courts lack subject-matter jurisdiction

26  to consider complaints that are "patently insubstantial" or

27  frivolous.  See Neitzke v. Williams, 490 U.S. 319, 327 n.6, 109

28  S. Ct. 1827, 1832 n.6, 104 L. Ed. 2d 338 (1989); see also

1  <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984)

2  (noting that a "complaint that is obviously frivolous does not

3  confer federal subject matter jurisdiction . . . and may be

4  dismissed sua sponte" (citation and internal quotation marks

5  omitted)); <u>Hagans v. Lavine</u>, 415 U.S. 528, 537–38, 94 S. Ct.

6  1372, 1379, 39 L. Ed. 2d 577 (1974) (a federal claim so

7  insubstantial as to be patently without merit cannot serve as

8  basis for federal jurisdiction).  A frivolous complaint is one

9  that "'lacks an arguable basis in either law or in fact.'"

10 <u>Martin v. Sias</u>, 88 F.3d 774, 775 (9th Cir. 1996) (quoting

11 <u>Neitzke</u>, 490 U.S. at 325).

12                 **ALLEGATIONS OF THE COMPLAINT**

13      Plaintiff alleges that sometime between January 1 and

14 February 7, 2012, "Court employee Doe1" filed a notice for

15 Plaintiff to appear in traffic court on "a criminal complaint";

16 the notice was signed by "Officer A. Santos, of the Los Angeles

17 Sheriff's Department, at Lakewood Station," who was "not licensed

18 to practice law" and "not authorized, by California law, to

19 initiate criminal prosecution in the name of the People of the

20 State of California."  (Compl. at 4.)  Plaintiff alleges that he

21 thereafter mailed "an informal request for discovery to the

22 District Attorney's office at Bellflower" and filed a "motion to

23 quash for lack of a Verified Complaint" in the superior court.

24 (<u>Id.</u>)  He also filed a "motion to dismiss on the grounds that the

25 Peace Officer and Clerk of Court are practicing law without a

26 license."  (<u>Id.</u>)  Plaintiff noticed his motions for June 6, 2012,

27 at 1 p.m. in Department 001 of the superior court.  (<u>Id.</u>)

28 Unnamed court employees either failed to schedule hearings for

1   Plaintiff's motions or failed to provide him notice of scheduled
2   hearing dates.  (Compl. at 5.)  "On June 1st, 2012 [Plaintiff]
3   attempted to file a peremptory challenge against Commissioner
4   Michael Pearce" but "[a] female court employee, Doe6, refused to
5   file [his] peremptory challenge around 2:20pm."  (Id.)
6   Thereafter,

7          Bikle made an appearance at Bellflower Courthouse on
8          June 6, 2012.  Bikle did not find his name on the list of
9          scheduled appearances posted outside of Department 001.
10         Bikle filed 1 original written peremptory challenge with
11         the Bellflower Courthouse and Bikle kept 1 original
12         written peremptory challenge that had been stamped as
13         received by the court, on June 6, 2012, before the
14         proposed hearing time of 1:00PM, as Bikle did not know if
15         a hearing would be held since two separate Deputy Clerks
16         of Court had specifically told him that they did not have
17         him scheduled for any thing other than an arraignment on
18         August 1, 2012.  Bikle was told by the first Deputy Clerk
19         that he could go into Department 001 but that he would
20         not be heard with out being scheduled.
21               On June 7, 2012 Traffic Supervisor "Martha" issued
22         process in the form of a "correspondence inquiry" to
23         Commissioner Michael Pearce.
24         This  correspondence  inquiry  indicates  that  the
25         Plaintiff was requesting "motion to quash & hearing for
26         6-6-12".  The correspondence inquiry did not indicate
27         that Plaintiff had provided a stipulation to have his
28         matters heard before Commissioner Pearce.  In addition,

5

1  there was no mention of Plaintiff's motion to dismiss on

2  the grounds that the Peace Officer and Clerk of Court

3  were practicing law with out a license. Martha indicated

4  that the alleged defendant failed to appear on June 6,

5  2012.  The correspondence inquiry also indicates that

6  Commissioner Pearce denied the motion to quash on June 7,

7  2012.

8          Commissioner Pearce was not authorized by law to

9  deny the motion to quash.

10          Pursuant to California State Constitution Article 6

11  Section 21, Commissioner Pearce had not obtained a

12  stipulation from Bikle at the time of his action.

13  (Compl. at 5-6.)  Plaintiff goes on to allege that he served

14  several "informal requests for discovery" on the District

15  Attorney's office in Bellflower and later a motion to compel

16  discovery, none of which received a response, and that he filed

17  in the superior court a "petition for a writ of Mandate and a

18  writ of Prohibition," which was "lost" by court staff.  (Compl.

19  at 6-7.)  Regarding the alleged loss of his motion papers and

20  failure to schedule a hearing on his motions, Petitioner then

21  makes the following allegations:

22          On August 1, 2012, Bikle appeared at Bellflower

23  Courthouse, 1PM, in department 001.

24          At this time, Commissioner Pearce failed to produce

25  the peremptory challenge, described earlier, from the

26  case file.

27          Doe8 did one of the following things to the

28  peremptory challenge, which resulted in Pearce's failure

6

1    to produce the filed peremptory challenge: Steal, remove,

2    or secrete; Destroy, mutilate, or deface; Alter or

3    falsify.  Bikle does not currently have enough facts to

4    determine which of the listed actions occurred to result

5    in the absence of the peremptory challenge from the case

6    file, but it is clear that one of the actions must have

7    taken place, as the record could not be found.

8        On August 1, 2012 Bikle appeared at Bellflower

9    Courthouse, in Department 006.  This appearance was the

10   result of disqualifying Commissioner Pearce.  Before

11   Bikle's case file was transferred from Department 001

12   Bikle had a discussion with Judge Sanchez, which was not

13   on the record.  During this discussion Bikle indicated

14   concern about getting a ruling on the motion to dismiss

15   and that the motion to quash denial was done with out

16   authority.  When Bikle's case file arrived Judge Sanchez

17   excused herself so that she could read over it.  She came

18   back within 20 minutes, at which point the record

19   started.

20       Bikle was exhausted due to only getting about 5

21   hours of sleep the night before as a result of anxiety

22   and pain.  Bikle was also in extreme pain at this

23   appearance.

24       Judge Sanchez immediately asked if Bikle wanted to

25   plead not guilty when the record started.

26       Judge Sanchez did not rule on the Document #1001

27   Version 1.001 titled, "Motion to dismiss on the grounds

28   that the Peace Officer and Clerk of Court are practicing

7

law without a license" before jumping ahead to ask for a
plea.  Judge Sanchez did not rule on the Document #1001
Version 1.001 during the first, second, third, or fourth
appearances of Bikle.

On August 1, 2012 Bikle requested for a [sic] copy
of the verified complaint pursuant to California Penal
Code 988.

Judge Sanchez gave the non-responsive comment, "The
judicial counsel form is an appropriate method to charge
you with the vehicle code sections.  So what plea did you
want to enter?" and changed the subject by asking what
plea I wanted to enter.  Judge Sanchez did not provide
Bikle with a copy of the alleged complaint upon my
request.

Bikle was exhausted and requested another week to
respond.

Judge Sanchez did not dismiss the case on any of the
occasions that Bikle raised oral argument regarding the
points contained within Document #1001 Version 1.001.

Bikle made numerous attempts to get the case
~~dismissed as there had clearly been no initiation of~~
prosecution by an individual who was authorized to
initiate criminal proceedings in the name of the People
of the State of California.

(Compl. at 7-8.)  Plaintiff thereafter alleges that he moved to
recuse Judge Sanchez, who "attempted to get Bikle to be a witness
against himself," and that his "petition for writ of mandamus"
was denied, but a clerk at the Stanley Mosk Courthouse in Los

1  Angeles "failed to provide [Plaintiff] with prompt notice of the
2  decision" denying his petition.  (Compl. at 9.)  He alleges that
3  his case was ultimately dismissed, "but none of the proposed
4  orders which Bikle had included with Document #1001 Version 1.001
5  and Document #1013 Version 1.000 were used[,] [b]oth of which
6  indicated that the prosecuting attorney had not initiated
7  prosecution."  (Id.)  Plaintiff asserts that "[a]t no point in
8  time did the record contain evidence of a final agency
9  determination in regards to the contested issue of the right to
10 travel and property use rather than the alleged operation of a
11 motor vehicle," and "[t]he jurisdiction of the court was not
12 invoked, at any time, by an individual authorized to initiate
13 criminal proceedings in the name of the People of the State of
14 California."  (Compl. at 10.)

15      Plaintiff asserts 22 causes of action against unnamed court
16 clerks Does 1-9, "Traffic Supervisor Martha," Commissioner
17 Pearce, Judge Sanchez, and the Bellflower superior court, for
18 violations of his Fifth and 14th amendment rights to due process
19 and equal protection and for conspiracy to deprive him of his
20 constitutional rights under 42 U.S.C. §§ 1985(3) and 1986; he
21 also brings a separate cause of action against all Defendants
22 under "California tort law."  (Compl. at 11-36.)  Plaintiff
23 alleges that Defendants' actions caused him "Physical pain and
24 suffering, including but not limited to exacerbation of
25 preexisting conditions"; "Emotional pain and suffering, including
26 but not limited to stress and anxiety"; "A substantial loss of
27 the enjoyment of life"; "humiliation"; "impairment of
28 relationships"; "Insomnia and nightmares"; "Chronic headaches";

                                   9

1  and "Development of fears and phobias." (Id.)

2                            **DISCUSSION**

3       Plaintiff's Complaint is frivolous and fails to state a

4  claim upon which relief may be granted.  Leaving aside

5  Plaintiff's claims that his traffic citation was issued by a

6  police officer (not named as a Defendant in this action) and

7  court clerk "practicing law without a license" (Compl. at 4),[1]

8  the entirety of the Complaint concerns actions taken by judges

9  and other court staff in the course of their judicial duties.

10 Those Defendants are absolutely immune from damages suits for

11 actions taken within their capacity as judges or court employees,

12 and all of Plaintiff's monetary claims against them must

13 therefore be dismissed with prejudice.  See Schucker v. Rockwood,

14 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam) ("Judges are

15 absolutely immune from damages actions for judicial acts taken

16 within the jurisdiction of their courts."); Mireles v. Waco, 502

17 U.S. 9, 9, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) (per

18 curiam) ("A long line of this Court's precedents acknowledges

19

20     _____

21        [1]    In People v. Stapf, 28 Cal. App. 4th 1756, 34 Cal. Rptr.
   2d 351 (1994), the California Court of Appeal held that the traffic
22 courts' procedure of allowing court clerks to file criminal
   complaints for failure to appear for traffic offenses did not
23 violate the California Constitution's separation-of-powers
   doctrine.  The California Supreme Court later denied review and
24 ordered the opinion not officially published. 34 Cal. Rptr. 2d 351
   (1995).  See also People v. Carlucci, 23 Cal. 3d 249, 590 P.2d 15
25 (1979) (holding that conducting traffic-infraction hearings without
   prosecutor does not deprive traffic-court defendants of due process
26 of law).    Regardless  of  the  legality  of  the  state's  traffic-
   violation procedures under state law, however, Plaintiff has cited
27 no authority, and the Court has found no authority, suggesting that
   those procedures violate any federal constitutional requirement.
28

                                     10

1  that, generally, a judge is immune from a suit for money

2  damages."); Miller v. Barilla, 549 F.2d 648, 648-49 (9th Cir.

3  1977) (affirming district court's dismissal of § 1983 damages

4  suit based on absolute immunity for trial judge, who allegedly

5  sentenced plaintiff in breach of plea bargain), overruled on

6  other grounds by Glover v. Tower, 700 F.2d 556, 559 (9th Cir.

7  1983); see also In re Castillo, 297 F.3d 940, 952 (9th Cir. 2002)

8  (explaining that court clerks enjoy "absolute quasi-judicial

9  immunity . . . for purely administrative acts – acts which taken

10  out of context would appear ministerial, but when viewed in

11  context are actually a part of the judicial function"); Mullis v.

12  U.S. Bankr. Ct., 828 F.2d 1385, 1390 (9th Cir. 1987) (holding

13  that bankruptcy clerks have absolute quasi-judicial immunity from

14  suit for refusing to accept amended complaint because such

15  actions relate to integral part of judicial process).

16      To the extent Plaintiff asserts that Commissioner Pearce (or

17  any other Defendant) was not authorized to hear his case and thus

18  may have been acting outside his judicial authority (see Compl.

19  at 6), that argument is unavailing.  Judicial immunity is

20  unavailable only when a judge acts in "clear absence of all

21  jurisdiction" or performs an act that is not judicial in nature.

22  See Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986).  For

23  purposes of determining judicial immunity, a clear absence of all

24  jurisdiction means a clear lack of all subject-matter

25  jurisdiction.  See Mullis, 828 F.2d at 1389.  It is immaterial

26  that the judge may otherwise have acted in error or in excess of

27  his authority.  See Stump v. Sparkman, 435 U.S. 349, 356, 98 S.

28  Ct. 1099, 1104, 55 L. Ed. 2d 331 (1978).  Here, the superior

1  court was authorized by statute to preside over traffic

2  infractions and misdemeanors. <u>See</u> Cal. Penal Code §§ 19.7,

3  1462.2.  Plaintiff's traffic infraction and all related

4  proceedings were therefore within the statutory jurisdiction of

5  the superior court.  Commissioner Pearce was an officer of the

6  superior court with full judicial powers and duties relating to

7  traffic infractions.  <u>See</u> Cal. Gov't Code § 72190; <u>see also</u>

8  <u>Branson v. Martin</u>, 56 Cal. App. 4th 300, 304-05, 65 Cal. Rptr. 2d

9  401, 403-04 (1997).  Accordingly, his limited conduct in denying

10 Plaintiff's motion to quash was well within his jurisdiction, and

11 he is entitled to judicial immunity from Plaintiff's claims.

12 Even if Commissioner Pearce's ruling was in error or exceeded his

13 jurisdiction, as the Ninth Circuit has observed, "a mistake or

14 act in excess of jurisdiction does not abrogate judicial

15 immunity, even if it results in 'grave procedural errors.'"

16 <u>Mullis</u>, 828 F.2d at 1390 (quoting <u>Stump</u>, 435 U.S. at 359).  Thus,

17 Plaintiff is not entitled to money damages from any of the court

18 employees, as all are judicially immune.  <u>See</u> <u>Jackson v. La.</u>

19 <u>Tech. Univ.</u>, Civil Action No. 11-0524, 2011 WL 6749014, at *6-10,

20 *12 (W.D. La. Nov. 22, 2011) (dismissing with prejudice § 1983

21 claims against judge for alleged misconduct in failing to set

22 hearings and denying plaintiff's various requests and motions in

23 traffic-citation case and against court clerks and court reporter

24 for failing to file motions and pleadings, failing to set motions

25 for hearing, and allegedly unlawfully altering hearing

26 transcripts because challenged actions were judicial or

27 administrative in nature and defendants therefore absolutely

28 immune from suit), <u>accepted by</u> 2011 WL 6749044 (W.D. La. Dec. 22,

12

1   2011).

2       Plaintiff also has not demonstrated entitlement to

3   injunctive relief "to halt all systemic acts of denial of due

4   process against members of the public in the County of Los

5   Angeles at the Superior Court of California in Bellflower."

6   (Compl. at 36; see also Compl. at 2.)  Plaintiff cannot seek an

7   injunction on behalf of "members of the public" because pro se

8   litigants have no authority to represent anyone other than

9   themselves.  See Simon v. Hartford Life, Inc., 546 F.3d 661, 664

10  (9th Cir. 2008) ("[T]he privilege to represent oneself pro se

11  provided by [28 U.S.C.] § 1654 is personal to the litigant and

12  does not extend to other parties or entities.").  Moreover,

13  Plaintiff fails to state which alleged constitutional violation

14  justifies injunctive relief, the nature of the injunctive relief

15  sought, or any other facts that would support a finding that

16  injunctive relief is appropriate.  Thus, his claim for injunctive

17  relief must be dismissed.  See Iqbal, 129 S. Ct. at 1949

18  (complaint is insufficient if it "tenders naked assertions devoid

19  of further factual development" (citation, internal quotation

20  marks, and brackets omitted)).

21      Plaintiff also cannot sue the superior court itself because

22  it is not a "person" within the meaning of § 1983; rather, it is

23  an arm of the state and is immune from suit unless the state has

24  expressly waived immunity.  See Simmons v. Sacramento Cnty.

25  Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff

26  cannot state a claim against the Sacramento County Superior Court

27  (or its employees), because such suits are barred by the Eleventh

28  Amendment."); Greater L.A. Council on Deafness, Inc. v. Zolin,

13

 1 | 812 F.2d 1103, 1110 (9th Cir. 1987) ("We conclude that a suit
 2 | against the Superior Court is a suit against the State, barred by
 3 | the eleventh amendment."). Typically, "[w]aiver of Eleventh
 4 | Amendment immunity by a state will be found only where stated by
 5 | the most express language or by such overwhelming implication
 6 | from the text [of a state statute] as [will] leave no room for
 7 | any other reasonable construction." Micomonaco v. Washington, 45
 8 | F.3d 316, 319 (9th Cir. 1995) (internal quotation marks and
 9 | citation omitted). There is no evidence that the superior court
10 | has waived its 11th Amendment immunity here. See BV Eng'g v.
11 | Univ. of Cal., L.A., 858 F.2d 1394, 1396 (9th Cir. 1988) (noting
12 | that California has not waived its 11th Amendment immunity to
13 | suit in federal court); Peltier-Ochoa v. Miele, No. EDCV
14 | 12-0663-JAK (RNB), 2012 WL 4107924, at *1 (C.D. Cal. Aug. 28,
15 | 2012) (noting that California has not waived 11th Amendment
16 | immunity, nor has "Congress . . . abrogated State sovereign
17 | immunity against suits under 42 U.S.C. § 1983"). Accordingly,
18 | Plaintiff's claims against the superior court must be dismissed.
19 | See Mahaley v. Baker, No. EDCV 12-01461-PSG(OP), 2013 WL 2480683,
20 | at *6 (C.D. Cal. June 10, 2013) (dismissing with prejudice § 1983
21 | claim against superior court because superior court is immune
22 | from suit under 11th Amendment).
23 |     Further, to the extent Plaintiff challenges the superior
24 | court's denials of any of his motions, the Court lacks subject-
25 | matter jurisdiction to hear such claims. Doing so would
26 | contravene the Rooker-Feldman doctrine, derived from two U.S.
27 | Supreme Court opinions, which provides that federal district
28 | courts may exercise only original jurisdiction; they may not

1    exercise appellate jurisdiction over state-court decisions.  See

2    Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462,

3    482-86, 103 S. Ct. 1303, 1315-17, 75 L. Ed. 2d 206 (1983); Rooker

4    v. Fid. Trust Co., 263 U.S. 413, 415-16, 44 S. Ct. 149, 150, 68

5    L. Ed. 362 (1923).  Review of state-court decisions may be

6    conducted only by the U.S. Supreme Court.  See Feldman, 460 U.S.

7    at 476, 486; Rooker, 263 U.S. at 416; see also 28 U.S.C. § 1257.

8    Rooker-Feldman bars "cases brought by state-court losers

9    complaining of injuries caused by state-court judgments rendered

10   before the district court proceedings commenced and inviting

11   district court review and rejection of those judgments." Exxon

12   Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125

13   S. Ct. 1517, 1521-22, 161 L. Ed. 2d 454 (2005).  To the extent

14   Plaintiff asks this Court to review and reverse the state court's

15   decisions denying any of his motions, his § 1983 action is

16   barred.  In any event, the charge against Plaintiff was

17   ultimately dismissed, according to the Complaint.  (Compl. at 9.)

18        Plaintiff also has not pleaded any facts to support a claim

19   under §§ 1985(3) or 1986.  Section 1985(3) prohibits conspiracies

20   to deprive "any person or persons" of equal protection under the

21   laws, equal privileges and immunities under the laws, or the

22   right to vote.  Any party injured as a result of a violation of

23   § 1985 "may have an action for the recovery of damages,

24   occasioned by such injury or deprivation, against any one or more

25   of the conspirators."  42 U.S.C. § 1985(3).

26        To state a claim under § 1985(3), a plaintiff must allege

27   "(1) that some racial, or perhaps otherwise class-based,

28   invidiously discriminatory animus [lay] behind the conspirators'

1   action, . . . and (2) that the conspiracy aimed at interfering

2   with rights that are protected against private, as well as

3   official, encroachment." Bray v. Alexandria Women's Health

4   Clinic, 506 U.S. 263, 267-68, 113 S. Ct. 753, 758, 122 L. Ed. 2d

5   34 (1993) (§ 1985(3)) (citations and internal quotations

6   omitted). "[T]he plaintiff must state specific facts to support

7   the existence of the claimed conspiracy." Olsen v. Idaho State

8   Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and

9   internal quotations omitted).

10       To state a claim for conspiracy to violate his right to

11   equal protection, Plaintiff must allege facts showing that he was

12   intentionally treated differently from others similarly situated

13   and that there was no rational basis for the difference in

14   treatment. See Village of Willowbrook v. Olech, 528 U.S. 562,

15   564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000); Barren v.

16   Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998). Conclusory

17   allegations will not suffice. See Iqbal, 129 S. Ct. at 1949;

18   Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir.

19   1988) (affirming dismissal of § 1985(3) claim containing "legal

20   conclusions but no specification of any facts to support the

21   claim of conspiracy").

22       Plaintiff alleges no facts whatsoever to support any of the

23   above requirements. Plaintiff's § 1985 claims must therefore be

24   dismissed.

25       Plaintiff's § 1986 claim must also be dismissed. A claim

26   under § 1986 requires as a prerequisite a violation of § 1985.

27   Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir. 1985).

28   Because Plaintiff has not alleged a valid § 1985 claim, he has

1    also failed to state a claim under § 1986.

2         Finally, because Plaintiff's federal claims all must be

3    dismissed, Plaintiff's state-law tort claims must be dismissed as

4    well.   A court may exercise supplemental jurisdiction over a

5    state-law claim if a plaintiff raises a cognizable federal claim

6    that is substantial enough to confer federal jurisdiction and

7    shares a common nucleus of operative fact with the state claim.

8    Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995); see 28 U.S.C.

9    § 1367.   If the federal claim is dismissed before trial, the

10   state claim should be dismissed as well.   United Mine Workers of

11   Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed.

12   2d 218 (1966).   Here, because the Court has dismissed all of

13   Plaintiff's federal claims for failure to state a claim, his

14   state-law tort claims must also be dismissed.

15        Because Plaintiff's Complaint is frivolous and it is

16   absolutely clear that its deficiencies cannot be cured by

17   amendment, the Court hereby ORDERS that the Complaint is

18   dismissed with prejudice.

19

20   DATED: _July 24, 2013_                  _David O. Carter_

21                                     DAVID O. CARTER
                                       U.S. DISTRICT JUDGE

22

23   Presented by:

24   _Jean Rosenbluth_

25   Jean Rosenbluth

26   U.S. Magistrate Judge

27

28

                              17